JAMES H. GOODWIN *vs.* RUFUS GIBBS and another.

Cumberland.    Opinion October 1, 1879.

*Flowage—Complaint.  Tenants in Common.*

Respondents, severally owning water mills on a stream, and as tenants in common owning and jointly maintaining a dam across the same on their own land, to raise a sufficient head of water to work their mills, may properly be joined in a complaint for flowage by the dam.

But when the complaint does not allege that the respondents created and maintained water mills on the stream on land of their own, it is bad.

Complaint for flowage inserted in a writ of attachment entered at the October term A. D. 1878.

Whereupon at said term the respondents severally filed demurrers to said declaration and complaint which were joined by the plaintiff and complainant, overruled by the court, and said declaration and complaint adjudged good. The respondents alleged exceptions.

The facts are sufficiently stated in the opinion.

*N. S. Littlefield,* for the complainant, cited *Nelson* v. *Butterfield,* 21 Maine, 220. *Walcott Manu. Co.* v. *Upton,* 5 Pick. 292. *Bates* v. *Weymouth,* 8 Cush. 548. *Fish* v. *Framingham,* 12 Pick. 68. *Billings* v. *Gibbs,* 55 Maine, 238. *Hill* v. *Baker,* 28 Maine, 9. *Moore* v. *Shaw,* 47 Maine, 88. *Davis* v. *Bingham,* 29 Maine, 391. *Benson* v. *Soule,* 32 Maine, 39.

*S. C. Strout, H. W. Gage* and *B. T. Chase,* for the respondents.

The mill act, R. S., c. 92, § 1, provides that "any man may erect and maintain a water mill, and dams to raise water for working it, on his own land." It is only in a case contemplated by this section, that a complaint for flowage, like the one at bar, can be maintained. It must be a dam to raise water for working a "water mill," and both the dam and the water mill must be upon land owned by the same party. Consequently the complaint must allege all these necessary facts, as a basis for this process. This complaint alleges that the dam is on land owned by said Billings and Gibbs, but does not allege that the mills, or either of them, are on land owned by them. This is fatally defective. *Jones* v. *Skinner,* 61 Maine, 25, and cases cited.

In point of fact, the dam is a reservoir dam, at the outlet of a pond owned by both defendants, as tenants in common, to retain water for a large number of mill owners below and to float logs, but the defendants do not own jointly, any mill or other improvement upon the stream, but Mr. Gibbs does own the first privilege below the reservoir dam, on which he owns, in severalty, a saw mill, shingle mill and woolen factory, which are operated by means of another dam some distance below the one complained of, while the tannery of Mr. Billings, owned by him, in severalty, is about one-fourth of a mile lower down on the stream, with a dam of his own, while between the two are one or two

other privileges with dams, belonging to other parties and opera-ating other mills ; and below Billings' are several other factories with separate dams. All these have the benefit of the reservoir dam, and none of them cause flowage on complainant's land.

The allegation in the complaint is that Gibbs owns "a saw mill, shingle mill and woolen factory," and Billings "a tannery." This implies, as the fact is, a several ownership.

The statute does not apply to the case of one man maintaining a dam on his land to operate a mill on another man's land. Both mill and dam must be owned by the same party to fall within the statute, § 1. All the proceedings provided for in c. 92, are inconsistent with the theory of this complaint, that joint owners of a dam may be liable to this process, when they have no joint ownership of a mill operated by means of the dam.

Sec. 3 provides for a regulation of the time of flowing and height of water. For whose mill, in this case? One may require more water than the other, or to flow a longer time.

Sec. 9 provides that the commissioners shall determine how far the flowing is necessary, &c.

Secs. 12 and 13 forbid flowing when prohibited by the commissioners, and furnish a new remedy in certain cases.

Secs. 15 and 16 give an action against the owner of the mill for the yearly damages awarded, and give a lien on the mill and dam.

How can these provisions be worked out in a case like this ? If these defendants are jointly liable for flowage, whose several mill is subject to lien, the one first benefited, or the next, or both ? Can a joint award and judgment under this statute, be a separate lien on mills of defendants, held in severalty ? Or if suit is brought for damages, shall both be liable *in solido ?*

Suppose Billings' tannery should be burned, or discontinued, can he still remain liable for the whole yearly damages, because Gibbs has a mill and he and Billings own a dam ?

These considerations show conclusively that this statute only applies where both dam and mill are owned in the same right and by the same parties.

It follows upon the facts and allegations in this case, that this

reservoir dam is not erected and maintained under the authority of chap. 92, but the rights of all parties are at com mon law, and this process cannot be maintained.   *Crockett* v. *Millett*, 65 Maine, 191, is decisive of this case.

The complaint alleges that Billings maintains a "tannery." There is no allegation that it contains any machinery run by water.   We submit that a tannery is not a "water mill," within the meaning of chap. 92, sec. 1.   The term is used in the statute to indicate a class of mills, in which something is ground or manufactured by the use of machinery propelled by water.   Such a definition does not include a mere tannery, where hides are prepared by hand for the vats and then left in the vats till saturated with bark liquor, and then dressed by hand.   There is no allegation that even a bark mill is operated in this tannery.   In this process water is used—but not to drive machinery.   The mill acts go to the verge of constitutional authority, and are, not to be extended by implication, this court has said in *Jordan* v. *Woodward*, 40 Maine, 324.

In *Dixon* v. *Eaton*, 68 Maine, 542, this court has held that a steam mill, and a dam to raise water for floating logs to it, is not within the mill act.

LIBBEY, J.   This is a complaint for flowage under R. S., c. 92, and comes before this court on demurrer to the complaint.   The complaint among other things alleges that the respondents "have heretofore erected and now maintain water mills on said stream of water, to wit : the said Rufus Gibbs a saw mill, shingle machine, and woolen factory; and said Horace Billings a tannery" and that said respondents "have heretofore erected and ever since such erection maintained a dam across said stream to raise water for the use of their said mills, and to propel the machinery in the same, and still maintain said dam which is on land owned by said Gibbs and Billings and of which they have control."

1. It is objected that the complaint does not allege that the respondent's mills are on their own land.   We think this objection is well taken.   The complaint alleges that the respondents severally maintain water mills on the ·stream, and that they jointly maintain a dam across the stream on their own land to raise a

sufficient head of water to operate their several mills, but there is no allegation that they, as tenants in common or in severalty own the land on which their mills stand. There should be such an allegation to bring the case within the statute. *Jones* v. *Skinner*, 61 Maine, 25. *Crocker* v. *Millett*, 65 Maine, 191.

2. It is further objected that inasmuch as the defendants are several owners of mills on the stream below the dam complained of, and own the dam and land on which it stands as tenants in common and jointly maintain it, the dam is not within the protection of the statute, and this remedy will not lie. It is claimed by the respondent's counsel that, to bring the case within the statute, all the tenants in common of the dam must own as tenants in common a mill operated by the water raised by the dam. It is admitted by the complainant's counsel that if this position is sound, it is fatal to the maintenance of the complaint, as the facts of the case will not admit of an amendment to obviate the objection. But after a careful consideration of the provisions of the statute, and the able argument of the respondent's counsel in support of this objection, we think it not tenable. Either of the respondents might erect and maintain the dam on his own land to raise a sufficient head of water to operate his mill; and no good reason is perceived why being owners of mills in severalty, they may not unite and erect and maintain a dam in common to raise sufficient water to operate them. They are the owners of the dam, and each owns a mill operated by the water raised by it. The statute does not in terms prevent mill owners from thus uniting in the maintenance of a dam. If it does not in terms clearly permit it, it is clearly within its spirit and object; otherwise the several owners of mills and privileges on opposite sides of a stream could not jointly erect and maintain a common dam across the stream for the use of the mills at each end of it, but to have the right to flow by paying damages, each must maintain a separate dam. This is believed to be in conflict with the custom in such cases, in this state, which, so far as we are aware, has not been brought in question. No case is cited by the respondent's counsel in support of their position, and so far as we are aware the question has not been presented to the court. It was involved

in *Nelson* v. *Butterfield*, 21 Maine, 220, but was not directly considered. It seems to have been conceded by counsel and the court that in a case like this a complaint for flowage would lie.

In *Norton* v. *Hodges*, 100 Mass. 241, the court intimates the opinion, that, when the dam is owned by one party, and by an arrangement with several mill-owners below, it is maintained to raise water for the use of their mills, all the parties to such arrangement may be joined in a complaint for flowage, but the point was not decided.

We are of opinion that the respondents are to be regarded as erecting and maintaining a water mill, and a dam to raise water for working it, within the true meaning of the statute.

*Exceptions sustained.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and SYMONDS, JJ., concurred.